All right, each slide has 15 minutes, and is everyone ready to proceed? All right, we're ready. Thank you. Good morning. Good morning, Your Honor. May it please the Court, David Boies, on behalf of the plaintiffs, and with the Court's permission, I will reserve five minutes for rebuttal. Okay. The Court below held that Williams v. Virginia controlled this case, and as a result, dismissed our complaint. Our burden here is to convince the Court that Williams does not control, and that the Court should proceed to the merits and examine our claim that this winner-take-all provision with respect to the Electoral College, not the Electoral College itself, but the winner-take-all provision of the Electoral College, violates the 14th and First Amendments. So you're arguing for a two-step process, correct? So I'm kind of wondering, why do we have to treat the Electoral College as a single-step or a two-step process? Why shouldn't we consider its unique, sui generis system established by the Constitution? It is, Your Honor. I think it's a sui generis thing established by the Constitution. However, as the Supreme Court has noted a number of times, and we indicate in our briefs, the fact that something is established in the Constitution, the fact that certain powers are given either to the federal government or to the state governments, does not eliminate the challenge to the exercise of those powers under the First Amendment or the 14th Amendment or any of the other amendments of the Constitution. So the fact that this two-step process is set up, and as this Court recognized just four years ago, a little bit less than four years ago, in 2016, in the Public Integrity Alliance case, an en banc decision of the Court, the Electoral College is a two-step process, just like the two-step process that was involved in Greg and Sanders. Changing the Electoral College, can you attack that in court, or is that something that has to be a constitutional amendment? I think changing the Electoral College has to be a constitutional amendment. I think that... So why isn't this an end-run? Well, Your Honor... I'm just... I'm trying to figure out the context, because I know there's a number of... As you can see, probably, as you watched the last case, I kind of like to understand what people are doing, what's the bigger picture, and I know there have been cases in other states about this, and where the motions to dismiss have been granted, and I'm just wondering, is this just... We're the Ninth Circuit, is this just a dress rehearsal for the Supreme Court, or what's going on here? Well, I think it is likely that this issue will probably land in the Supreme Court at some point. But to address the Court's question, this is not an end-run around the Electoral College. The Electoral College does a number of things, as this Court recognized in the Public Integrity Alliance case. It gives a certain additional weight to smaller states. We're not attacking that at all. It gives the power to the states to select electors, not through popular election, but through the state legislature's determination, as has sometimes been done in history. We're not attacking that power. We think it would be unwise and undesirable, but we're not attacking that as a constitutional issue. What we're attacking here is the way the winner-take-all implementation of it is effective. I mean, for example... But how many states do it the way that California does? Sorry, say? Aren't there like 47 states that do the same thing? Everybody except Nebraska and Maine, Your Honor. So, you know, I know a stop clock is right twice a day, and so I'm not... But it's just surprising to me with people out there with their, you know, political imaginations haven't thought about this before. So I mean, that doesn't mean that a novel argument, someone has to make it first. But I'm wondering why people have let this lie with 47 states, and then suddenly now, here we are. Your Honor, I was asked that very question in the Proposition 8 litigation, when the court said, well, states have prohibited same-sex marriage for a long time, why hasn't anybody challenged that in federal court? And the very first time that that was challenged in federal court was in the Perry case here in the Ninth Circuit. But if sort of the passage of time insulated practices from constitutional review, a lot of things wouldn't have changed in this country. So are you handling... You're handling this all across the country? Are you handling all of these cases? Yes, Your Honor. Because I'm not used to seeing you represent Republicans, but some of the others are Democrats. We represented the Democrats, Your Honor, in Texas, and we represented the Republicans in Massachusetts. Okay. And here. Well, you had a tough argument coming in because of Williams, and that's made a little tougher now that the Fifth Circuit has ruled. So in essence, you're asking us to create a circuit split. Yes. And Your Honor, let me address the Fifth Circuit, because obviously that's a sister circuit. They've taken up and addressed every issue that you've brought up in this case, haven't they? Well, they did in some senses. Unlike the district court, in this case, the Fifth Circuit recognized that Williams did not preclude our First Amendment argument. However, what the Fifth Circuit essentially did was say that there was no discrimination because it was a political issue, not a racial issue. That argument, I think, is contrary to the Supreme Court decisions in Whitcomb against Chavez, in Rogers against Lodge, both of which we've cited to this court. I think that the Fifth Circuit also, I think, misapprehended our argument with respect to the Whitcomb against Chavez argument. Let me ask you this, counsel. There's no allegation of invidious discrimination in this case, as was the case in White v. Register. Is that correct?  We do allege discrimination and we do allege that we meet the standards for discrimination in the multi-member election cases, White v. Register, Whitcomb v. Chavez. So we do allege that here. But in terms of the Fifth Circuit argument and the Fifth Circuit decision, one of the things that they say is that the Whitcomb against Chavez and Gray against Sanders don't apply. And one of the reasons they say that Gray against Sanders doesn't apply is they don't recognize the holding in footnote 12 of that opinion that we all rely on. Now, that may be Fifth Circuit law, but the Ninth Circuit has already recognized the interpretation, we think correctly, but the interpretation that we rely on for the Gray against Sanders case. In the Public Integrity Alliance case in 2016, an en banc decision from this court, this court expressly recognized that Gray against Sanders held that in a two-step election process, to discard the votes of the minority in the second step was a violation of the two-step process that we have been interpreting, we think incorrectly, but whatever that law would be in terms of interpretation of Gray v. Sanders in that circuit, this circuit has already addressed that issue. This circuit also, in that very same case, recognized that the Electoral College process was a two-step process just like, and it analogized it, this court analogized it to the two-step process that was held improper in Gray against Sanders. So I think that the Fifth Circuit, with all due respect, I think was wrong. But regardless of whether it was right or wrong in the Fifth Circuit, we think there is quite different law here in the Ninth Circuit with respect to those issues. Well, obviously, the best way for you to get to the Supreme Court, if we wanted, would be for us to go the other way, and then there's a split in the circuit. But we're going to decide the case. Obviously, I can't speak for anyone, but we're going to decide it. Does it matter? Let's say we agree that Williams is, this is hypothetical, that Williams is controlling here and we rule against you. Does it really matter whether we do it in an opinion or in a mem dispo? Will that, does that affect your Supreme Court journey? You mean whether... Unpublished, mem dispo. The Supreme Court has granted on mem dispos, but... I think it probably does not matter, Your Honor. We obviously would urge the court to write on this issue because we think it's a really critical issue, an important issue. And frankly, I think, to be blunt, I think it's very hard to write an opinion against us in this case. Okay, do you want to save the balance of your time? You're at four minutes and 30 seconds. Thank you very much. Okay, thank you. Good morning. Good morning. May it please the court, Patty Lee for the State Defendants. This case is about California's decision to use a particular electoral method, plurality voting, for the selection of its presidential electors. This decision is an exercise of California's plenary power under Article II, Section 1. States exercise this plenary power as sovereign entities within the electoral college. The plaintiff's complaint here is that the electoral method chosen by California results in their votes not being counted in the national election for president. However, there is no national election for president. There are 51 separate elections that are held for the purpose of awarding presidential electors. And California has chosen the most common method in the United States. Plurality voting dates back to the very first presidential election. The founding generation, including Thomas Jefferson, thought that this was an acceptable electoral method. In the election that is held to award California's presidential electors, all votes are counted equally. This is why every court to have considered this issue has rejected this type of claim, usually in reliance on the Williams case, which was, as you know, summarily affirmed by the Supreme Court and is controlling precedent here. And this includes, as the court is aware, the Fifth Circuit's decision last week rejecting an identical challenge in the Texas case. There is no two-step holding for Gray versus Sanders. I understand plaintiffs are relying very heavily on footnote 12 in that case. However, no court has recognized Gray versus Sanders as standing for the proposition that plaintiffs present. Every court to have interpreted Gray versus Sanders, particularly the Supreme Court and the Ninth Circuit, has always recognized that case as being about geographic discrimination, about the unequal treatment of votes based on the location of the voter. So do you think that California's WTA system is a single step or a two-step process, or is it neither? It depends on how you want to define it. For our purposes, it frankly doesn't matter how many steps it is because every vote is counted equally when determining the outcome of the election that is held in California. And I understand, you know, plaintiffs have presented various theories of what the two steps are, depending on whether this is interpreted as an election for the president or as an election for presidential electors. None of that matters because Gray does not stand for a proposition that there is a rule against the use of plurality voting in any type of election, regardless of the number of steps. Do you expect the Supreme Court decisions in the consolidated cases of Chalfillow versus Washington and Colorado Department of State versus Baca to have any impact on this litigation? No, I don't anticipate that they will. In those sets of cases that the Supreme Court will hear this April, I believe, the issue there is whether states can take steps to bind their electors, to enforce requirements under state law that their electors cast their electoral votes for the presidential candidates of their political parties. That case does not involve a challenge to the method of appointing presidential electors in any of the states, even if the Supreme Court were to rule in that case and find that there is a prohibition on a state imposing a penalty, for example, or removing a faithless elector. The process which is used, I believe, in all states whereby the presidential electors are nominated by political parties, by processes controlled by political parties, those would all continue. I think you would continue to see the nomination of electors that would, in large part, follow the expectation that they will vote for their presidential candidates of their political parties. And so we don't see that that particular litigation will have an effect on this one. In terms of the multi-member district cases that plaintiffs have cited, we don't think those are relevant. California does not use a multi-member districting system for the election of its presidential electors. The plaintiffs are not seeking to have California move to a districted method of elections. And even if those cases were relevant, the standard for finding that a particular electoral method violated the Equal Protection Clause in those cases simply has not been met here. In those cases, the courts found that there were political exclusion from political participation. They found that there were pretty egregious examples of exclusion from voter registration, that type of thing. There is no allegation here that the Republicans are being denied the right to vote, to register, any of that kind of thing. How would the change sought by the plaintiffs burden California, the state? California has decided as an exercise of its authority under Article 2, Section 1, that it wants to award its presidential electors in the manner that allows those 55 electoral votes to have the biggest impact possible in the electoral college. And so a decision forcing California to split its votes, essentially, would reduce the impact of those votes. It would reduce the impact of the electoral votes that could go to the presidential candidate whom a majority of Californians support. And it would split the vote. And that has been well recognized as a negative effect of a proportional allocation of electors by going back to the earliest presidential elections, as recognized by Thomas Jefferson and as discussed in the Williams case. So it would really impair California's ability to make sure that its electoral votes have the biggest effect possible. So does Williams, in your view, answer all the questions or all the issues raised by the appellants or just some? I understand appellants are arguing at a minimum that Williams does not control the First Amendment claims here. I believe it's significant that the Williams court found that the supposed negative effects of the use of plurality voting, the supposed discarding or dilution of votes was not. Didn't the U.S. Williams court, though, just basically affirm a lower court opinion or did it? Do we have a full blown opinion there? Yes. So the Williams versus Virginia opinion was initially decided by a three judge panel in Virginia. And that and so there is there is a full, well reasoned opinion there directly considering the one person, one vote claim that was presented and made in reliance on Gray versus Sanders. And so it's a similar argument as the one that plaintiffs attempt to advance here. Yes, yes. I believe it is a very similar argument. And and, you know, giving that that case a careful read, you will recognize some of the same themes and language and claims that that plaintiffs are advancing here. And so that is why the Supreme Court just affirmed that. Right. The Supreme Court summarily affirmed that opinion. And then I believe later denied it didn't do a full opinion of its own. It did not. But that does not mean that that the summary affirmance is not controlling precedent. The standard, you know, even for a summary affirmance is that if the same issues were necessarily decided, a lower court cannot go against that opinion. And here the same issues were certainly squarely presented. So if plaintiffs were able to allege invidious discrimination that restricts the ability of voters to participate equally in the presidential elections, and that would bring them closer to the multi-member district cases. Right. But but here it's more of a voter dilution theory, discrimination allegations, yes, but more on a dilution theory. Is that how you read it? The the allegations that that plaintiffs make here, the claim, the type of claim they are presenting is more like a vote dilution theory than an argument that that the state of California has not been districted properly, for example. And as I have explained, there is no issue about the districting within California. But we don't believe that plaintiffs have alleged anything close to what would be required for a finding that that the use of plurality voting in awarding presidential electors was enacted for a discriminatory purpose, has invidious discriminatory effects of the kind that the practices considered by the courts in those multi-member districting cases had. And the court, the Supreme Court has has explicitly considered and rejected arguments that the that the effects of plurality voting, the supposed lack of representation of minorities, excuse me, of supporters of the minority party. The Supreme Court has has said, I believe, in the Whitcomb case that even when legislative seats are considered safe seats for a certain party and year after year, election after election, they go to the same party, that in and of itself is not a discriminatory practice that is prohibited under the Equal Protection Clause. It is simply what happens when a certain party wins an election and a certain party loses. And I think it's clear from just looking at the history of how electoral votes have been awarded in California. You know, this this method of awarding electoral votes dates back to the very first presidential election that California participated in in 1852. And over the course of 150 years, it has benefited different political parties. And there is no showing that it was enacted in order to suppress a particular minority party. And I think it is well recognized in the jurisprudence that just simply the fact of the minority party not winning any seats or any representation under a plurality voting system, that in and of itself is not constitutionally suspect. I don't think we appear to have any additional questions. Thank you. Thank you, Your Honor. First, with respect to Williams, the Supreme Court, in a whole series of cases, including Mandel against Bradley, what we cite in our brief, has made absolutely clear that in terms of a summary affirmance, which is what happened in Williams, that is a precedent only with respect to the and this is the language of the Supreme Court, the Now, what are the different issues presented here from Williams? First, there was no issue presented in terms of Williams in terms of the two-step holding that we are relying on. Second, there was no issue presented in Williams with respect to the voter dilution that comes from selecting a multi-member delegation in a single vote. That was not discussed in part because the first Supreme Court case that actually held a violation based on that theory was four or five years later in White against Register. Third, the Williams court specifically says there is no allegation, there is no assertion in that case of any discrimination contrary to what we're alleging here. Fourth, there was, of course, no challenge under the First Amendment. So for all of those reasons, and then additional reasons that we say in our brief, but for all of those four critical reasons, Williams cannot be controlling. And so what ought to happen is we ought to have an opportunity to have our case presented on the merits in the district court. That was what was precluded to us and to the plaintiffs as a result of the motion to dismiss. Now, if there are any problems with any of the allegations being precise enough in this case, then what should have happened is there should have been, and the court recognized, that ordinarily you'd have an opportunity to amend your complaint. The court held that was futile because Williams controlled. If Williams doesn't control, at a minimum, the court was wrong to dismiss the case with prejudice. Now, counsel says that no court has recognized the Gray against Sanders holding, that we say is a holding, as an actual holding. That simply is not true. In Gordon against Lance, the Supreme Court interpreted it the same way we're interpreting it. And this court, as I said before, in public integrity alliance case in 2016 on Gordon v. Lance, incidentally, held that the court had, in Gray against Sanders, held unconstitutional, not merely because the geographic units in the state had different populations, but because of the two-step process that was involved. And the only sense in which that's a geographic, as the public alliance case makes clear, the only sense in which that is geographic is that you're losing your vote because you happen to be in a political entity in which you are in a minority. But when you were in that two-step process, and as I say, there can't be in this circuit any doubt that the electoral college is a two-step process after public integrity alliance. When you're in that two-step process, Gray against Sanders says you cannot, at the second step, throw away the votes of the minority, which is what happens when you have a winner-take-all approach to the election. So this is a case in which I respectfully suggest the assembly affirmance in Williams cannot be today controlling. I mean, we also argue, and I think correctly, that there have been many the 14th Amendment and the First Amendment, and in the marriage equality litigation, this court distinguished what is equivalent of a summary affirmance. It was really a dismissal for lack of a substantial federal question of a Supreme Court case that was otherwise directly on point. And the Fourth Circuit in Bostick, which we again cite in our briefs, holds that that, in effect, summary affirmance by the Supreme Court was no longer binding just because of doctrinal changes. I think your time is up, but Judge Christensen says he has a question. So please, I'm going to ask him to ask a question. Mr. Boies, let's assume that Williams does not control your First Amendment claims. Can you tell me, tell us in summary fashion, why the winner-take-all process here in California inhibits your client's ability to participate fully in presidential elections, associate with like-minded voters, or petition the government or presidential candidates? One of the things that the Supreme Court has held is that when you weaken the ability of a political party to function, that is a violation of the First Amendment's freedom of association. And the context in which that has come up before has not been the context of actions that the state has taken that has somehow weakened political parties. For example, where sometimes they force political parties to accept open primaries, sometimes they restrict who can become a member of a political party. But there are a number of actions that have been taken that this court has concluded somehow weakens the ability of the political party to function. But weaken, not in the sense of restricting their ability to associate with like-minded voters, but this, there's a disincentive there. Is that the argument? Well, a disincentive. They're not saying you can't associate, but they are reducing the incentives, or they're in some cases placing a burden. And where that weakens the ability to associate, weakens the effectiveness of the association, and one of the things that we allege, and we think we could prove this if the case had not been dismissed and we'd had an opportunity to go to the merits, one of the things that we allege is that where you have a consistent pattern of one political party, Republicans here, Democrats in South Carolina, to contest effectively elections or have any chance of having a voice in the selection of the president. That inherently weakens the political party and burdens and reduces the incentive of the ability of people to band together for that purpose. And that that is a important associational value, and one that has been recognized by the courts, and particularly by the Supreme Courts, only in the last few decades. That is something that wasn't focused on, wasn't recognized. All right. I've allowed you to go over. If my colleagues are satisfied, their questions are answered. All right. Thank you. That'll conclude argument in this case. Thank you both for your argument. This will stand submitted.
judges: Callahan, Nguyen, Christensen